UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE LANDING COUNCIL OF CO-OWNERS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-12-2760 |
| | § | |
| FEDERAL INSURANCE COMPANY, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion for summary judgment filed by defendant Federal Insurance Company ("Federal") (Dkt. 43) and a motion to strike plaintiff the Landing Council of Co-owners' (the "Council") sur-reply filed by Federal (Dkt. 56). Having considered the motions, related filings, and applicable law, the court is of the opinion that the motion for summary judgment (Dkt. 43) should be GRANTED IN PART AND DENIED IN PART and the motion to strike (Dkt. 56) should be GRANTED.

**I. BACKGROUND**

This is an insurance coverage dispute. The Council is a homeowners' association that managed and maintained a condominium development called "The Landing" in Clear Lake, Texas. Dkt. 29. Federal issued a ForeFront Portfolio for Not-for-Profit Organizations insurance policy (policy number 8208-8151) (the "Policy") to the Council for the policy period of July 27, 2009, through July 27, 2010. Dkt. 51-1. The Policy included directors and officers liability and entity liability coverage with a maximum aggregate limit of liability of $1,000,000. *Id.*

The Landing was damaged during Hurricane Ike on September 9, 2008. Dkt. 29. The Council's Board of Directors (the "Board") scheduled a special meeting and vote for October 10,

2009, to determine the extent of damage caused by the hurricane under Article XII of the Landing's Declaration. Dkt. 43, Ex. 1, Ex. I. On October 5, 2009, a group of "Concerned Owners of the Landing Condominiums" sent the Council a demand letter, which objected to the special meeting. *Id.* Federal considers this letter to be a "claim" under the Policy. Dkt. 43. In the letter, the Concerned Owners objected to the meeting because the Landing's Declaration required that this type of special meeting be called within 40 days after the damage to the condominiums, and that deadline had passed. Dkt. 43, Ex. 1, Ex. I. The Concerned Owners demanded that the Board cancel the special meeting and vote by October 7, 2009. *Id.* The Council did not succumb to the demand, and the Concerned Homeowners filed a lawsuit in which they sought a declaratory judgment and a temporary restraining order, preliminary injunction, and permanent injunction to stop the meeting. Dkt. 43, Ex. 1, Ex. J. Almost a year later, in September 2010, three additional lawsuits (*Raffety*, *Bull Capital*, and *Teichgraeber*) were filed against the Council, all of which are "related claims" under the Policy to the claim initiated by the Concerned Owners' demand letter. Dkt. 43; Dkt. 51-1. Under the Policy, "related claims" are treated as a single claim for purposes of determining which policy applies. Dkt. 51-1. Thus, the Policy, which covers claims made from July 27, 2009 through July 27, 2010, covers all of the related claims that are the subject of this coverage dispute.[1]

The Council requested coverage under the Policy for the three lawsuits that were filed in September 2010. Dkt. 43. Federal denied coverage based on the Property Damage Exclusion contained within the Policy. *Id.* The Property Damage Exclusion excludes coverage for any claims that are "based upon, aris[e] from, or [are] in consequence of any . . . damage to or destruction of any tangible property." Dkt. 51-1. The Council filed a petition in state court on July 31, 2012,

---

[1] The parties do not dispute that the claims that are the subject of the instant dispute (*Raffety*, *Bull Capital*, and *Teichgraeber*) are all "related claims" and fall under the Policy.

asserting that the Council and several of its current and former board members and officers had been sued and that despite repeated demands for defense and indemnification, Federal denied coverage. Dkt. 1-10. The Council asserted the following claims relating to the denial of defense and indemnity for the three claims filed in September 2010: breach of contract, violations of the Texas Insurance Code, negligence, breach of the common law duty of good faith and fair dealing, and fraud. *Id.*

On September 14, 2012, Federal removed the case to this court. *Id.* Federal now moves for summary judgment, arguing that coverage for the underlying lawsuits is excluded under the Property Damage Exclusion and that judgment should thus be granted in its favor as a matter of law. Dkt. 43. Federal also asserts that coverage of a cross claim filed in one of the cases is precluded under both the Property Damage Exclusion and the Insured Versus Insured Exclusion. *Id.* The Council argues that many of the causes of action in the underlying cases are not subject to the Property Damage Exclusion. Dkt. 47. It does not, however, address the assertion that coverage of the cross claim is precluded by the Insured Versus Insured Exclusion. *See id.*

Federal filed a reply brief, and the Council responded to Federal's reply brief (the sur-reply). Dkts. 52, 55. Federal moves to strike the Council's sur-reply. Dkt. 56. The court's procedures state, "Reply briefs filed by movants will be considered if submitted before the court rules on the motion. Generally, reply briefs should be submitted within five (5) days after the non-movants' response to the motion is filed." Judge Gray H. Miller's Court Procedures § 6.A.4. The procedures do not indicate that the court will consider any additional briefs. While the court sometimes will allow additional briefing when parties move to submit additional briefing and justice so requires, here there was no motion to submit additional briefing, and the court does not believe that justice requires it to accept the additional briefing. The sur-reply essentially reiterates the arguments in the Council's response, though in a somewhat more detailed fashion. *Compare* Dkt. 47 (response), *with*

3

Dkt. 55 (sur-reply). Federal's motion to strike the Council's response to its reply (Dkt. 56) is therefore **GRANTED**.

## II. LEGAL STANDARDS

### A. Motion for Summary Judgment

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id*. "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment

4

proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

**B.    Duty to Defend and Indemnify**

Under Texas law, courts follow the "eight corners" rule to determine whether a party has a duty to defend. *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 723 (5th Cir. 1999). "Under this rule, courts compare the words of the insurance policy with the allegations of

proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

**B.    Duty to Defend and Indemnify**

Under Texas law, courts follow the "eight corners" rule to determine whether a party has a duty to defend. *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 723 (5th Cir. 1999). "Under this rule, courts compare the words of the insurance policy with the allegations of

the plaintiff's complaint to determine whether *any* claim asserted in the pleading is potentially within the policy's coverage." *Id.* "The duty to defend analysis is not influenced by facts ascertained before the suit, developed in the process of litigation, or by the ultimate outcome of the suit." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004). Rather, it is determined by examining the eight corners of the pleadings and the policy. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). All doubts with regard to the duty to defend are resolved in favor of the duty. *Id.* Courts applying the eight corners rule "give the allegations in the petition a liberal interpretation." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). They must not, however, "read facts into the pleadings, . . . . look outside the pleadings, or imagine factual scenarios which might trigger coverage." *Id.* at 142.

The insured has the burden of showing that a claim is potentially within the coverage of the policy. *Federated Mut. Ins. Co.*, 197 F.3d at 723. However, "if the insurer relies on the policy's exclusions, it bears the burden of proving that one or more of those exclusions apply. . . . Once the insurer proves that an exclusion applies, the burden shifts back to the insured to show that the claim falls within an exception to the exclusion." *Id.* Courts "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 623, 666 (Tex. 1987). However, the "rules favoring the insured . . . are applicable only when there is an ambiguity in the policy; if the exclusions in question are susceptible to only one reasonable construction, these rules do not apply." *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 701 (5th Cir. 1996).

In Texas, an "insurer's duty to defend and duty to indemnify are distinct and separate duties." *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). An "insurer may have a duty to defend but, eventually, no duty to indemnify." *Id.* While the duty to defend is determined according to the eight-corners rule, the "duty to indemnify is determined based on the facts actually established in the underlying suit." *Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of*, 334 S.W.3d 217, 220 (Tex. 2011). However, in "some circumstances the pleadings can negate both the duty to defend and the duty to indemnify." *Id.* This is the case "when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*" *Farmers Tex. Cnty. Mutual Ins. Co.*, 955 S.W.2d at 84. If, however, coverage turns of facts actually proven in the underlying lawsuit, then courts must "defer resolution of indemnity issues until the liability litigation is resolved." *Id.*

### III. ANALYSIS

Federal moves for summary judgment on all of the Council's claims, arguing that the Property Damage Exclusion in the Policy precludes coverage for the three underlying lawsuits and that if there is no coverage, then all of the Council's claims fail. Dkt. 43. Federal also asserts that the coverage of the cross claim filed in one of the underlying lawsuits is precluded under both the Property Damage Exclusion and the Insured Versus Insured Exclusion in the Policy. *Id.* The Council does not address the Insured Versus Insured Exclusion in its response. *See* Dkt. 47. However, the Council argues that the Property Damage Exclusion does not apply to various different causes of action contained within some of the petitions in the underlying cases, as the causation between the property damage and these underlying claims is too attenuated. *Id.* Federal asserts, however, that since the Property Damage Exclusion uses the term "arises from," the standard under Texas law is merely "but-for" causation, and none of the underlying claims would have arisen but

for the property damage caused by Hurricane Ike. Dkt. 43; Dkt. 52. The Council argues that if one were to accept Federal's interpretation of the exclusion, then the exclusion would be contrary to public policy. Dkt. 47. The court will first briefly discuss the underlying lawsuits. Then, it will address whether the cross claim at issue is subject to the Insured Versus Insured Exclusion, whether the causes of action in the underlying lawsuits are subject to the Property Damage Exclusion, and whether the Property Damage Exclusion is contrary to public policy, *seriatim*.

### A. The Underlying Lawsuits

The first underlying lawsuit, *Raffety, et al. v. The Landing Council of Co-Owners, et al.*, was filed in the 127th District Court in Harris County, Texas, on September 8, 2010. The *Raffety* plaintiffs asserted a claim against the Council for negligence in failing to prepare for Hurricane Ike and in cleaning up and repairing the property after the hurricane. Dkt. 45, Ex. 1, Ex. C.

The second underlying lawsuit, *Bull Capital Co., et al. v. The Landing Council, et al.*, was filed in the 190th District Court in Harris County, Texas, on September 10, 2010. The *Bull Capital* plaintiffs originally asserted claims for negligence in failing to prepare for Hurricane Ike, failing to repair structures or appeal the City of El Lago's determination that there was "substantial damage" from the hurricane, and wasting assets after the hurricane rather than spending them to repair structures. Dkt. 45, Ex. 1, Ex. D. By their seventh amended petition, the *Bull Capital* plaintiffs asserted additional negligence grounds and added claims for gross negligence, breach of fiduciary duty, and breach of contract. Dkt. 45, Ex. 1, Ex. E. The breach of fiduciary duty claim relates to the same underlying issues as well as various other items related to allegedly not repairing the structures or taking the necessary steps to ensure that residents could return to their units, and allegedly mismanaging affairs following the hurricane. *Id.* The *Bull Capital* plaintiffs' breach of contract claim asserts that the board members allegedly did not adhere to the duties and

responsibilities contained in The Landing Declaration and By-Laws when they allegedly mismanaged insurance proceeds and failed to adequately manage the condominium units after the hurricane. *Id.* There is also a cross claim associated with this case (the "*Bull Capital* Cross Claim") in which Lee Ann Wheelbarger, a condominium owner and a member of the Council's Board of Directors from 2007 through 2010, asserts claims against the Council for violations of the Texas Property Code relating to mishandling insurance proceeds from the hurricane and a subsequent fire that damaged four of the seventeen buildings, for failing to repair the buildings, for having the buildings demolished without appropriate consent of all owners, and for otherwise not following The Landing Declaration and Bylaws. Dkt. 45, Ex. 1, Ex. F.

The third underlying lawsuit, *Teichgraeber v. Landing Council of Co-Owners, et al.*, was filed in the 11th District Court of Harris County, Texas, on September 13, 2010. Teichgraeber asserted that the Board ordered the property vacated after the hurricane even though there was minimal damage to her unit and that the Board allowed the property to deteriorate thereafter. Dkt. 45, Ex. 1, Ex. G. Teichgraeber sought damages for the diminution in value of her property and the loss of rental income. *Id.* She eventually amended her petition to assert claims for breach of fiduciary duty and negligence. Dkt. 45, Ex. 1, Ex. H.

**B.     Insured Versus Insured Exclusion**

The Policy contains an exclusion of any claim "brought or maintained by or on behalf of any **Insured** in any capacity . . . ." Dkt. 51-1 at APP 0028. "**Insured** means the **Organization** or any **Insured Person**." *Id.* at APP 0024. "**Insured Person** means any natural person who was, now is or shall become an **Executive** or **Employee** of the **Organization**." *Id.* An "Executive" includes "a duly elected or appointed director." *Id.* According to the complaint in the *Bull Capital* Cross Claim, Wheelbarger was a member of the Board from 2007 through 2010 and served as a secretary some

9

of that time. Dkt. 43, Ex. 1, Ex. F at APP 0174. Federal asserts that Wheelbarger was therefore an "Executive" under the Policy and that her cross claim is excluded. Dkt. 43. The Council does not address this argument. Federal's motion for summary judgment with regard to its duty to defend and indemnify for the *Bull Capital* Cross Claim on the ground that the Insured Versus Insured Exclusion applies is **GRANTED**.

C. **Property Damage Exclusion**

The property damage exclusion in the main part of the Policy states:

> 5. The Company shall not be liable for **Loss** on account of any **Claim**:
> . . . .
>> (e) for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person, or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed.

Dkt. 51-1 at APP 0029. An endorsement to the Policy contains an amendment to the property damage exclusion:

> In consideration of the premium charged, it is agreed that subparagraph (e) of Section 5 Exclusion of this Coverage Section is amended to read in its entirety as follows:
>> (e) based upon, arising from, or in consequence of any actual or alleged bodily injury, mental anguish, emotional distress, sickness, disease or death of any person, or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed.

Dkt. 51-1 at APP 0038.

Federal argues that the broad language in the amended exclusion precludes coverage for any of the claims asserted in the underlying lawsuits because they are all "based upon, aris[e] from, or [are] in consequence of . . . damage to or destruction of any tangible property . . . ." Federal contends that the term "arise from" merely requires "but for" causation and that none of the claims

10

would have arisen but for the property damage caused by the hurricane. Dkt. 43. The Council argues that "arising under" means that the property damages must have produced or substantially produced the injuries alleged in the underlying claims. Dkt. 47. The Council asserts that many of the causes of action alleged in the underlying claims are "intervening causes of action" and thus did not produce or substantially produce the injuries and consequently do not fall within the exclusion. *Id.* While the term "intervening causes of action" is somewhat unclear, the court believes that the Council is arguing that some of the events giving rise to some of the causes of action were intervening causes. Specifically, the Council asserts that damages from breach of fiduciary duty, breach of the Texas Property Code, breach of contract, breach of association by-laws, and/or declaratory judgment actions are not the normal result of a hurricane and are, instead, caused by a third person's failure to act. *Id.* The Council asserts that these actions by a third person brought about a different harm than the hurricane. *Id.*

Under Texas law, the phrase "'arise out of' means that there is simply a 'causal connection or relation,' . . . which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." *Utica Nat'l Ins. Co. of Tex. v. Am. Indemn. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (citations omitted). "In cases involving separate and independent causation, the covered event and the excluded event each independently cause the plaintiff's injury, and the insurer must provide coverage despite the exclusion." *Willbros RPI, Inc. v. Continental Cas. Co.*, 601 F.3d 306, 311 (5th Cir. 2010). "In cases involving concurrent causation, the excluded and covered events combine to cause the plaintiff's injuries," and, "[b]ecause the two causes cannot be separated, the exclusion is triggered." *Id.*

The court will consider separately whether there was an independent cause giving rise to and thus a duty to defend and indemnify with regard to each cause of action the Council calls into

11

question: breach of fiduciary duty, breach of the Texas Property Code, breach of contract, breach of association by-laws, and/or declaratory judgment actions.[2] Then, the court will consider the other causes of action asserted in each of the three underlying cases and determine whether, in each case, there was a duty to defend and indemnify.[3]

**1. Fiduciary Duty**

There are breach of fiduciary duty claims in the *Bull Capital* and *Teichgraeber* cases. In *Bull Capital*, the plaintiffs alleged that the Board misled the plaintiffs by failing to disclose (1) the extent of the damage to The Landing caused by the hurricane; (2) the cost to repair the damage; and (3) the pecuniary interest of Timothy Patak, a Board consultant, in the development planned for The Landing property after demolition. Dkt. 45, Ex. E. Additionally, they alleged the Board failed to repair or maintain structures damages by the hurricane, failed to disclose and accept an offer made by FEMA relating to the damage, failed to provide the City of El Lago with accurate data regarding the fair market value of The Landing's structures and cost to repair, wasted assets after the hurricane rather than spending the sums to repair and maintain damaged structures, failed to collect assessments necessary for security and insurance, and failed to undertake actions requested by the

---

[2] The court notes that the Council failed to delineate where these specific claims were contained within the record. The court has attempted to examine the four corners of each underlying claim for the relevant causes of action. However, the court points out that it is not the court's obligation to sift through the record to find evidence to support the Council's opposition to summary judgment. *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (quotations and citation omitted)). Nevertheless, the court has attempted to review each of the underlying petitions to determine whether they contain the categories of causes of action that the Council asserts are "intervening causes of action."

[3] The court does not address the causes of action contained in the *Bull Capital* Cross Claim since it has already determined that the entire cross claim is excluded under the Insured Versus Insured Exclusion. The only request for a declaratory judgment is in the *Bull Capital* Cross Claim.

City of El Lago that would have allowed residents to quickly return to their units. *Id.* With regard to the assessments, the factual allegations indicated that the Board failed to collect assessments after the hurricane because it wanted to force the co-owners into approving the Council's termination and eventual sale of The Landing to the development in which at least one board member is believed to have an undisclosed interest. *Id.* While most of the allegations with regard to breach of fiduciary duty appear to have arisen because of the hurricane, if the Board failed to collect assessments after the hurricane due to an undisclosed interest in selling The Landing, then this claim could have arisen independent of the hurricane. Thus, with regard to the fiduciary duty issue, there was a duty to defend the *Bull Capital* case.

The *Teichgraeber* case also involves a breach of fiduciary duty claim. The *Teichgraeber* plaintiffs alleged that the Board intentionally breached its fiduciary duty it owed to the co-owners by mismanaging insurance proceeds received as a result of the hurricane. Dkt. 45, Ex. H. This claim could not have arisen but for the hurricane. Thus, with regard to the fiduciary duty issue only, there was no duty to defend the *Teichgraeber* claim.

### 2. **Breach of the Texas Property Code**

The only allegations of breach of the Texas Property Code in the underlying lawsuits are in the *Bull Capital* case. The *Bull Capital* plaintiffs alleged that the Board, in violation of the Texas Condominium Act (which is section 81.001 *et seq.* of the Texas Property Code), unlawfully wasted insurance proceeds for purposes other than repairing hurricane damage and failed to make and assess assessments for common expenses, including security. Dkt. 45, Ex. E. While clearly the Board would not have been able to waste insurance proceeds relating to the hurricane property damage but for the hurricane, it is alleged that the Board failed to make and assess assessments for common

expenses, including security. This claim appears to be separate and independent of the hurricane. Thus, with regard to the Texas Property Code issue, there was a duty to defend the *Bull Capital* case.

        3.      **Breach of Contract/Breach of Association By-Laws**

The only breach of contract or breach of the Association By-Laws claims in the underlying lawsuits are in *Bull Capital*. The *Bull Capital* plaintiffs alleged that the Declaration established specific duties owed to the plaintiffs by the Board and that the Board breached these duties when it (1) unlawfully wasted insurance proceeds received as a result of the hurricane; (2) failed to make and collect assessments in violation of Texas Property Code section 82.112(a); (3) failed to maintain and repair The Landing's structures; (4) failed to reconstruct improvements after the hurricane; (5) failed to hold Article XII meetings in conformity with the terms of the Declaration; and (6) had The Landing's remaining structures demolished in April 2011 instead of attempting to sell The Landing with the structures intact. Dkt. 45, Ex. E. Again, as the court noted in the discussion of the alleged Texas Property Code violations, the failure to collect assessments is not alleged to have arisen as a result of the property damage. Thus there was a duty to defend the *Bull Capital* case.

        4.      **Other Causes of Action in Each Underlying Claim**

The underlying lawsuits also contain causes of action that are not delineated by the Council as arising due to an intervening cause. Federal argues broadly that the exclusion applies to all of the causes of action in all of the underlying cases.

        a.      *Raffety.* In *Raffety,* the only cause of action asserted was negligence. The negligence claim relates specifically to property damage occurring because of the hurricane and failure to clean up and repair the property after the hurricane. This claim clearly arose from property damage related to the hurricane and is subject to the Property Damage Exclusion. The Council has not argued that the *Raffety* negligence claim falls within an exception to the exclusion. Thus, Federal had no duty

14

to defend the *Raffety* case. And, since the exclusion applies, there was no coverage and no duty to indemnify.

        **b.** *Teichgraeber.* In addition to the breach of fiduciary duty cause of action, the *Teichgraeber* plaintiffs also asserted a negligence claim. Specifically, the *Teichgraeber* plaintiffs asserted that the Council did not exercise reasonable care to preserve the value of their property. This cause of action clearly arose from property damage related to the hurricane and it thus clearly falls within the Property Damage Exclusion. The Council does not argue that there are any exceptions to this exclusion. Since the only other claim asserted in the *Teichgraeber* case was the breach of fiduciary duty claim, which the court has already found would not have arisen but for the property damage associated with the hurricane, Federal had no duty to defend the *Teichgraeber* case. Since the exclusion applies, there was no coverage and thus no duty to indemnify.

        **c.** *Bull Capital.* There are additional causes of action in the *Bull Capital* case that likely arose from property damage associated with the hurricane. However, the court has already found that some of the causes of action in that case are not specifically alleged to have arisen from property damage. If some of the claims, if taken as true, state a claim within the policy terms, then Federal had a duty to defend that lawsuit. *See Hartford Cas. Co. v. Cruse*, 938 F.2d 601, 605 (5th Cir. 1991) ("Because some of the claims in the Cruses' state court complaint, if taken as true, state a cause of action within the policy terms, Hartford breached its duty to defend.").

    **5.** **Causes of Action in the Council's Lawsuit**

The Council asserts claims in this lawsuit for breach of contract, breach of fiduciary duty, unjust enrichment, constructive trust, negligence, fraud, fraud in the inducement, negligent misrepresentation, breach of the Texas Insurance Code, Breach of the Duty of Good Faith and Fair Dealing, and Malice. Dkt. 29. Federal asserts that it is entitled to judgment as a matter of law that

15

the Property Damage Exclusion unambiguously applies to exclude coverage to the Council and, in the absence of coverage, all of the Council's claims fail. Dkt. 43 at 12. The court will address each cause of action separately, as, contrary to Federal's assertion, not every cause of action hinges solely on whether the Property Damage Exclusion applied.

      a.    **Breach of Contract.** The Council asserts in its pleading that Federal breached the Policy by failing to defend the Council and denying coverage. Dkt. 29. Since Federal has shown that the Property Damage Exclusion applied with regard to the *Raffety* and *Teichgraeber* cases, there consequently could not have been a breach with regard to those cases. Thus, the motion for summary judgment with regard to the breach of contract claim is GRANTED IN PART AND DENIED IN PART. It is GRANTED with regard to the *Raffety* and *Teichgraeber* cases, and it is DENIED with regard to the *Bull Capital* case.

      b.    **Breach of Fiduciary Duty.** The Council asserts in its pleading that Federal had a fiduciary duty arising from a special relationship between the parties and breached its duty by denying coverage lawfully and contractually set forth in the Policy. Dkt. 29. Additionally, the Council asserts that Federal had a duty to defend without regard to the truth or falsity of the allegations in the underlying cases. *Id.* Again, this claim cannot survive if there was no duty to defend in the first instance. Thus, the motion for summary judgment with regard to the breach of fiduciary duty claim is GRANTED IN PART AND DENIED IN PART. It is GRANTED with regard to the *Raffety* and *Teichgraeber* cases, and it is DENIED with regard to the *Bull Capital* case.

      c.    **Unjust Enrichment.** The Council asserts in its pleading that Federal breached the Policy by denying coverage and, as a result, was unjustly enriched. Dkt. 29. This claim likewise could not survive if there was no duty to defend. Thus, the motion for summary judgment with regard to the unjust enrichment claim is GRANTED IN PART AND DENIED IN

PART. It is GRANTED with regard to the *Raffety* and *Teichgraeber* cases, and it is DENIED with regard to the *Bull Capital* case.

        **d.**    **Constructive Trust.** The Council requests that the court find that a constructive trust exists and that Federal is a constructive trustee of funds it holds as a result of unjust enrichment arising from its breach of fiduciary duty. Dkt. 29. The motion for summary judgment with regard to the request for a constructive trust is GRANTED IN PART AND DENIED IN PART. It is GRANTED with regard to the *Raffety* and *Teichgraeber* cases, and it is DENIED with regard to the *Bull Capital* case.

        **e.**    **Negligence.** The Council asserts that Federal had a duty to provide a legal defense and coverage and that it breached the duty which is the proximate cause of economic injury to the Council. Dkt. 29. Since this cause of action also stems on the duty to provide a defense and coverage, and there was not duty to defend or provide coverage for the *Raffety* and *Teichgraeber* cases, Federal's motion for summary judgment on the negligence claim is GRANTED with regard to those cases. It is DENIED with regard to the *Bull Capital* case.

        **f.**    **Fraud.** The Council asserts that at the time the Policy was entered into, Federal's representative made one or more material representations regarding the extent of coverage which were false. Dkt. 29. There is not indication that this claim hinges exclusively on whether or not there was a duty to defend and indemnify. Thus, the motion for summary judgment on the fraud claim is DENIED.

        **g.**    **Fraud in the Inducement.** The Council asserts similar claims with regard to the fraud in the inducement claim. Dkt. 29. Again, there is no indication that this claim hinges solely on whether there was a duty to defend and indemnify. Thus, Federal's motion for summary judgment as to the fraud in the inducement claim is DENIED.

h. **Negligent Misrepresentation.** The Council asserts that Federal's representative falsely represented to the Council that the Policy would cover the Council for Directors' liability. Dkt. 29. This claim does not automatically fail simply because the court has found no duty to defend or indemnify in some of the underlying cases. Federal's motion for summary judgment on this claim is DENIED.

I. **Breach of the Texas Insurance Code.** The Council asserts that Federal breached the Texas Insurance Code by failing to timely provide coverage mandated by the Policy, by failing to timely settle or defend the claim, and by rejecting the claim. Dkt. 29. If there was no duty to defend or indemnify, then the claim for breach of the Texas Insurance Code necessarily fails. Thus, Federal's motion for summary judgment with regard to the breach of the Texas Insurance Code claim is GRANTED IN PART AND DENIED IN PART. It is GRANTED with regard to the *Raffety* and *Teichgraeber* cases, and it is DENIED with regard to the *Bull Capital* case.

j. **Breach of Duty of Good Faith and Fair Dealing.** The Council conclusorily states in its pleading that Federal breached the duty of good faith and fair dealing by failing to defend "and by otherwise mishandling claims against Plaintiff." Dkt. 29. The pleading does not contain any factual allegations relating to "mishandling" other than just the actual denials of the claims. *See id.* Simply denying claims that were appropriately denied is not mishandling of the claims. Federal's motion for summary judgment with regard to the breach of the duty of good faith and fair dealing is GRANTED IN PART AND DENIED IN PART. It is GRANTED with regard to the *Raffety* and *Teichgraeber* cases, and it is DENIED with regard to the *Bull Capital* case.

k. **Malice.** The Council also alleges in its pleading that Federal "purposefully refused to defend Plaintiff as required by the policy [and] acted with reckless disregard for the legal rights and welfare of Plaintiff." Dkt. 29. Since the Policy did not require defense of the *Raffety* and

*Teichgraeber* cases, Federal's motion for summary judgment on the malice claim with regard to those cases is GRANTED. Federal's motion for summary judgment on the malice claim with regard to the *Bull Capital* case is DENIED.

**D.     Public Policy**

Plaintiffs assert the interpretation of the exclusion urged by Federal is so broad in scope that it effectively precludes almost any claim under any policy for any reason and that this interpretation is thus against public policy. Dkt. 47. They argue:

> [I]f one accepts [Federal's] interpretation of Exclusion 5(e), particularly [Federal's] interpretation of the *based upon, arising from or in consequence of* language, it is clearly so broad that it virtually eliminates an incredibly large spectrum of causes of action for any reason, which can only be interpreted to be injurious to the public good. In effect, what Federal has said to Council by the amendment to 5(e) is: *We have sold you an officers and directors liability policy insuring you, and we know that your sole function relates to property, so we now exclude coverage for any liability relating to or arising from property; therefore, we are selling you a policy that excludes any liability related to your primary purpose in buying this policy.*

*Id.* at 13. Federal points out that the terms are broadly applied by Texas courts and the Fifth Circuit. Dkt. 52.

The Council has not provided the court with any Texas cases or statutes indicating that Texas public policy dictates against insurers including these types of exclusions in their policies. While the court understands that the Council believes the exclusion to be unfair given the Council's line of business, the court must presume that the Council read the policy and understood its contents. *See Hunton v. Guardian Life Ins. Co. of Am.*, 243 F. Supp. 2d 686, 706 (S.D. Tex. 2002) (collecting cases) ("In Texas, an insured has a duty to read the insurance policy and is charged with knowledge of its contents."). If the Council did not wish to enter into an policy that contained a broad exclusion

19

for claims arising from property damage, it could have negotiated to change the exclusion or obtained insurance from a different carrier.

## IV. CONCLUSION

Federal's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. Federal's motion for summary judgment as the breach of contract, breach of fiduciary duty, unjust enrichment, constructive trust, negligence, and malice claims as they relate to the *Raffety* and *Teichgraeber* cases and the *Bull Capital* Cross Claim is **GRANTED**. These claims are **DISMISSED WITH PREJUDICE**. However, the motion for summary judgment on these claims with respect to the *Bull Capital* case is **DENIED**. Additionally, the motion for summary judgment with regard to the fraud, fraud in the inducement, and negligent misrepresentation claims—with respect to all the underlying lawsuits—is **DENIED**.

It is SO ORDERED.

Signed at Houston, Texas on September 9, 2013.

_____
Gray H. Miller
United States District Judge